IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| ROSEN AUTO LEASING, INC., | ) | |
| | ) | CASE NO. BK02-81781 |
| Debtor(s). | ) | A04-8047 |
| THOMAS D. STALNAKER, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| GEORGE GRATTON, | ) | |
| | ) | |
| Defendant. | ) | |
| IN THE MATTER OF: | ) | |
| | ) | |
| JEROME A. ROSEN, | ) | |
| | ) | CASE NO. BK02-82963 |
| Debtor(s). | ) | A04-8085 |
| THOMAS D. STALNAKER, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| GEORGE GRATTON, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM

Trial was held in Omaha, Nebraska, on May 4, 2005, regarding the complaint filed by Chapter 7 trustee Thomas D. Stalnaker to avoid and recover preferential transfers and fraudulent conveyances. Ann M. Grottveit appeared for the trustee, and Kathryn J. Derr appeared for George Gratton. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(F) and (H).

Rosen Auto Leasing, Inc. ("Rosen Auto"), was in the business of selling and leasing used cars. At the time the bankruptcy case was filed, it had been in business since at least 1985. Jerome A. Rosen ("Mr. Rosen") was, at the time the petition was filed and within one year prior to the date of the petition, the major shareholder of the corporation and chairman of the board.

George Gratton ("Mr. Gratton") is an individual who had a long-term acquaintanceship with Mr. Rosen. Mr. Gratton, in addition, had been a lender to Rosen Auto on more than one occasion over the twenty years preceding the bankruptcy petition date. He also had invested in preferred shares of Rosen Auto.

In 1999, Mr. Gratton loaned Rosen Auto $300,000. The appropriate officers of Rosen Auto executed a promissory note to Mr. Gratton, and Mr. Rosen signed a personal guarantee of the obligation to Mr. Gratton.

In 2001, as result of market forces in the new and used automobile industry, Rosen Auto began to have some cash flow problems. Vehicles being returned from leases were worth less than the Rosen Auto officials had estimated when they leased the vehicles. That meant that reselling the leased vehicles resulted in a loss on each vehicle. In addition, the wholesale and retail value of the used car inventory had declined, resulting in less revenue being received upon the sale of each used car.

In late 2001, Mr. Gratton requested that his promissory note be paid in full. The note itself does not appear to be a demand note. It was a note requiring payment of interest and principal on a monthly basis over eight years. It had a default clause which permitted Mr. Gratton to call the note due and demand payment if one or more of the contingencies in the default clause came to fruition. However, in the fall of 2001, none of the circumstances which would have allowed the note to be called had come to fruition.

Mr. Rosen and the president of Rosen Auto believed the note to be a demand note, even though their books and records treated it as a long-term obligation. Based upon such belief, they agreed that Rosen Auto would pay the note.

In late January of 2002, Rosen Auto delivered a check for a little more than $241,000 to Mr. Gratton in full payment of the promissory note. Mr. Rosen and Mr. Gratton then had a conversation, apparently instigated by Mr. Rosen, which resulted in a new transaction. Mr. Gratton treated the check from Rosen Auto as full payment of the obligation owed to him by Rosen Auto. He then endorsed the check to Mr. Rosen. As consideration for such endorsement, Mr. Rosen personally signed a promissory note to and for the benefit of Mr. Gratton for exactly the same amount of money as represented by the check. The terms of the promissory note were not as good for Mr. Gratton as the original promissory note with Rosen Auto had been, but with this promissory note, Mr. Gratton received a deed of trust to certain real property owned by Mr. Rosen in Arizona. Contemporaneously, Mr. Rosen endorsed the check to Rosen Auto. Rosen Auto gave Mr. Rosen a promissory note for the same amount represented by the check.

The result of these transactions is that Rosen Auto still owed a little in excess of $241,000, but instead of owing it to Mr. Gratton, the company owed it to Mr. Rosen. Mr. Rosen held an asset, the promissory note from Rosen Auto, and had an obligation, the promissory note to Mr. Gratton. Mr. Rosen also granted Mr. Gratton an interest in the Arizona property. Mr. Gratton was still owed a little in excess of $241,000, but instead of being an unsecured creditor of Rosen Auto, he became a secured creditor of Mr. Rosen.

The above-described transactions were completed on or about February 4, 2002. Shortly thereafter, the Rosen Auto cash flow situation worsened and various banks that had financed the sale or lease of vehicles began to demand that the installment buyers or lessees pay their monthly payments directly to the banks. As that continued to occur with more and more banks, the Rosen Auto cash flow dried up and a Chapter 11 petition was filed in May of 2002. Rosen Auto operated in Chapter 11 for a number of months and then converted to Chapter 7.

In the fall of 2002, an involuntary bankruptcy petition was filed against Mr. Rosen. He

agreed to relief being granted and converted the case to Chapter 11.  Within a few months, he voluntarily converted his individual case to Chapter 7.

Thomas Stalnaker was named by the United States Trustee and the court to be the Chapter 7 trustee in both the corporate and individual cases.  After investigating the transactions between the two debtors and Mr. Gratton, the trustee filed these two adversary proceedings which have been combined for discovery and trial.  In each adversary proceeding, the trustee alleges that the transactions described above are avoidable by the trustee either as preferences under 11 U.S.C. § 547 or as fraudulent conveyances under 11 U.S.C. § 548.

The Bankruptcy Code at 11 U.S.C. § 547(b) provides:

> . . . [T]he trustee may avoid any transfer of an interest of the debtor in property —
> (1)  to or for the benefit of a creditor;
> (2)  for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3)  made while the debtor was insolvent;
> (4)  made —
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if —
> (A)  the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

According to the statute, the trustee may not avoid under Section 547 a transfer:

> (1)   to the extent that such transfer was —
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange;
> (2)  to the extent that such transfer was —
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> (C) made according to ordinary business terms[.]

11 U.S.C. § 547(c).

The Bankruptcy Code at 11 U.S.C. § 548, concerning fraudulent transfers and obligations, provides:

(a) (1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily —

    (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

    (B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

        (ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

        (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

        (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

A defense to the trustee's attempt to avoid such a transfer is found at 11 U.S.C. § 548(c), which states:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

The term "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor. 11 U.S.C. § 548(d)(2)(A).

The transfers in question, the delivery of the check in excess of $241,000 by Rosen Auto to Mr. Gratton and the granting of a lien on property of Mr. Rosen in consideration of the delivery and endorsement to him of the check, both occurred more than ninety days prior to either petition date. Therefore, in order for the trustee to have the statutory right to avoid either or both of the transactions as a preference, the trustee must first prove that Mr. Gratton was an "insider" of either Rosen Auto in the case of the corporate transfer, or of Mr. Rosen in the case of the individual transfer of the deed of trust. The term "insider" is statutorily defined at 11 U.S.C. § 101(31). That section provides that an "insider" includes–

(A) if the debtor is an individual —
    (i)    relative of the debtor or of a general partner of the debtor;
    (ii)    partnership in which the debtor is a general partner;
    (iii)    general partner of the debtor; or
    (iv)    corporation of which the debtor is a director, officer, or person in control;

      (B) if the debtor is a corporation —
          (i)     director of the debtor;
          (ii)    officer of the debtor;
          (iii)   person in control of the debtor;
          (iv)   partnership in which the debtor is a general partner;
          (v)    general partner of the debtor; or
          (vi)   relative of a general partner, director, officer, or person in control of the debtor.

Mr. Gratton does not fit into any of the categories enumerated above.

     Although Mr. Gratton does not appear to qualify as a statutory insider, the trustee is not limited to the statutory provisions specifically listed in the Code. Meeks v. Bank of Rison (In re Armstrong), 231 B.R. 746, 749 (Bankr. E.D. Ark. 1999). In addition to the statutory definition of "insider," the court may determine whether a transferee qualifies as a non-statutory insider, for preference purposes, by focusing on two basic factors: (1) the closeness of the relationship between the debtor and the transferee; and (2) whether transactions between the transferee and the debtor were conducted at arm's length. Hirsch v. Tarricone (In re A. Tarricone, Inc.), 286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002).

     According to the Tarricone court, the ultimate test for non-statutory insider status is whether the alleged insider is as likely to receive preferential treatment as statutory insiders enumerated by Congress. Id. In addition, "courts have held that creditors with no direct relationship with the debtor (other than as a creditor) may be deemed non-statutory insiders by virtue of their close personal relationship with persons who are statutory insiders." Id. at 263-64 (citing Three Flint Hill Ltd. P'ship v. The Prudential Ins. Co. (In re Three Flint Hill Ltd. P'ship), 213 B.R. 292, 300-01 (D. Md. 1997) and Loftis v. Minar (In re Montanino), 15 B.R. 307, 309-11 (Bankr. D.N.J. 1981)).

     With regard to the relationship between Mr. Gratton and Mr. Rosen, as well as the relationship between Mr. Gratton and Rosen Auto, there is no dispute that Mr. Rosen and Mr. Gratton have been acquaintances and "friends" for many years. Early on, they socialized together on a regular basis. They have in the past played golf together regularly. They both owned winter vacation homes in the same neighborhood in Arizona. Mr. Gratton has frequently loaned money to Rosen Auto.

     On the other hand, testimony of Mr. Rosen, Mr. Gratton, Mr. Otten (the former president of Rosen Auto), and one other witness called by Mr. Gratton, who was a friend and golfing associate of both Mr. Gratton and Mr. Rosen, is to the effect that Mr. Gratton and Mr. Rosen had a falling-out several years prior to the 2002 transaction. They were no longer social friends, but that change in the relationship did not cause Mr. Gratton to refuse to loan money to Rosen Auto. There is no evidence from the trustee of a continuing "close personal relationship" between Mr. Gratton and Mr. Rosen.

     On examination by the trustee, Mr. Gratton asserted that he continued to loan money to Rosen Auto because it appeared to be a good business deal. He had always received a decent interest rate and all prior loans had been repaid on a timely basis. Even the 1999 loan, which was paid off as a result of the transaction in question, had been paid monthly as required by the terms of the note.

Testimony by Mr. Otten, by Mr. Rosen, and by Mr. Gratton, uncontradicted by any evidence presented by the trustee, is that Mr. Gratton had no information about the difficult cash position Rosen Auto was in at the end of 2001 and the beginning of 2002. He had no "insider" information, but requested to be paid in full on the advice of his financial counselors in Arizona who suggested that he had too many eggs in one basket by investing hundreds of thousands of dollars in preferred stock of Rosen Auto and loaning Rosen Auto, on an unsecured basis, $300,000. When Mr. Rosen suggested a change in the mix, that is, a new note from Mr. Rosen to Mr. Gratton, and the granting of a deed of trust interest in the Arizona real property, Mr. Gratton was satisfied that such a transaction was good business for him.

The trustee argues that Mr. Gratton received special treatment different from any other unsecured creditor. Upon request of payment in full, Rosen Auto paid him in full, even though the Rosen Auto bank account did not contain sufficient funds to actually do so. The trustee presented evidence that on or about the date the check was delivered to Mr. Gratton, the Rosen Auto account was in overdraft status and therefore the trustee argues that the check would not have cleared the bank. However, neither party presented any evidence with regard to whether, in late January or early February 2002, the bank upon which the check was drawn would have denied payment had the check been presented for payment. There is evidence in the record that the Rosen Auto operating checking account frequently was in overdraft status, to the extent of hundreds of thousands of dollars. Even though overdrafts existed, the bank had not, as of the date of the transaction in question, bounced any checks, closed the bank account, or refused to grant additional credit to the debtor Rosen Auto. As a result, it cannot be found as a fact that the check would not have cleared.

It appears the 1999 loan transaction between Rosen Auto and Mr. Gratton was an arm's length transaction. A promissory note with an interest rate and detailed terms for repayment was executed and monthly payments were made pursuant to the terms of the note. Similarly, the February 2002 transaction appears to have been an arm's length transaction. A promissory note with an interest rate and detailed terms for repayment was executed and monthly payments were made pursuant to the terms of the note.

Considering the totality of the circumstances surrounding the relationship between Mr. Gratton, Rosen Auto, and Mr. Rosen, I find that Mr. Gratton is not a non-statutory insider.

The result of the fact-finding that Mr. Gratton is not a non-statutory insider is that the trustee has failed to prove a necessary element of the preference avoidance statute and the attempt to avoid the transfer of more than $241,000 to Mr. Gratton and to recover such amount from Mr. Gratton is not successful. Similarly, in Mr. Rosen's individual case, the trustee has the same burden to prove that Mr. Gratton is an insider. Based upon the same consideration of all of the evidence presented, I find that the position of the trustee is not well-taken and the trustee is unable to avoid as a preference the transfer of an interest in real estate owned by Mr. Rosen and represented by the deed of trust granted to Mr. Gratton.

Separate judgment will be entered in both adversary proceedings in favor of Mr. Gratton and against the trustee with regard to the preference counts.

With regard to the fraudulent transfer allegations in both adversary proceedings, there is no evidence that either the payment to Mr. Gratton by Rosen Auto or the transfer of a deed of trust to Mr. Gratton in Mr. Rosen's case were made with actual intent to hinder, delay, or defraud any

creditor. 11 U.S.C. § 548(a)(1)(A).

The second part of Section 548(a)(1) permits a trustee to avoid a transfer made by the debtor if the debtor received less than reasonably equivalent value in exchange for the transfer and either was insolvent on the date the transfer was made or became insolvent as a result of the transfer, or was engaged in business for which any property remaining with the debtor was unreasonably small capital or the debtor intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured. 11 U.S.C. § 548(a)(1)(B).

When Rosen Auto delivered the check to Mr. Gratton and received a release of the obligation represented by the promissory note, Rosen Auto actually received reasonably equivalent value. It delivered a check in excess of $241,000 and the note in excess of $241,000 was deemed paid. Whether the check was good or could have been cashed by Mr. Gratton is irrelevant to the analysis. Mr. Gratton believed he was receiving a check equal to the amount of the promissory note. He had no reason to believe otherwise because there had been no discussion with him concerning Rosen Auto's cash flow problems. The trustee has failed to meet his burden to prove the very first element of Section 548(a)(1)(B) and therefore the attempt to avoid the payment by Rosen Auto to Mr. Gratton fails.

Another way to look at it from the point of view of Rosen Auto, the debtor, is that no cash or other assets left the estate of Rosen Auto as a result of the delivery of the check. On the other hand, Rosen Auto was relieved of an obligation to Mr. Gratton. Looked at in this manner, there has not even been a transfer of an interest of the debtor in property.

Under either analysis, there has not been a fraudulent transfer that is avoidable by the trustee under 11 U.S.C. § 548.

Mr. Rosen was either a guarantor of or co-maker of Rosen Auto's debts. Because of that fact, the trustee suggests that the Rosen Auto payment to Mr. Gratton, Mr. Rosen's execution of a personal promissory note and a deed of trust to Mr. Gratton, and the transaction between Mr. Rosen and Rosen Auto by which the check was endorsed to Rosen Auto creating an obligation whereby Rosen Auto owed Mr. Rosen in excess of $241,000, should be collapsed and treated as one transaction. That might have been a logical method for analyzing the situation under Section 548 if the promissory note to Mr. Gratton had simply been assigned to Mr. Rosen, rather than cancelled. If it had been assigned to Mr. Rosen, there would have been no extinguishment of the debt for the delivery of the check in excess of $241,000. But that is not what happened. Rosen Auto paid Mr. Gratton and received a cancellation of the obligation to Mr. Gratton. Separately, Mr. Rosen borrowed in excess of $241,000 from Mr. Gratton with a different interest rate and different repayment terms from the original Rosen Auto note. In consideration for that loan, Mr. Rosen executed a promissory note and granted Mr. Gratton an interest in real property represented by the deed of trust.

The result of the transaction is not that Mr. Rosen owes any more money than he owed before the Rosen Auto payoff occurred. Because he was a guarantor of the Rosen Auto debt to Mr. Gratton, he still owes the same amount that he owed before the Rosen Auto debt was extinguished. On the other hand, the real result of the transaction is that his estate is depleted by the value of the real property interest given to Mr. Gratton through the deed of trust.

Therefore, with regard to the trustee's assertion that the granting of the deed of trust to Mr. Gratton is a fraudulent transfer of debtor Mr. Rosen's property, the initial question is whether Mr. Rosen received reasonably equivalent value for the transfer of the interest in real estate.

Mr. Rosen, at the time the transaction took place, was aware of the cash flow difficulties Rosen Auto was having. He was chairman of the board of Rosen Auto and, although not in daily control of the business operations, did receive regular financial statements. In addition, he knew when Mr. Gratton initially requested repayment of the loan that Rosen Auto did not have sufficient cash available to pay the loan at that time, December of 2001. Nothing much changed in the cash flow situation of Rosen Auto between December of 2001 and late January and early February of 2002. Mr. Rosen had knowledge of the cash situation at Rosen Auto. After Mr. Gratton endorsed the check to Mr. Rosen, Mr. Rosen, rather than cashing the check, endorsed it to Rosen Auto. Rosen Auto, rather than cashing the check, manipulated it in conjunction with another checking account so that no actual cash left Rosen Auto as a result of writing the check. Because neither Mr. Rosen nor Rosen Auto received anything of value when they in turn accepted the endorsed check, I conclude that Mr. Rosen did not receive reasonably equivalent value for the transfer of the interest in real estate.

Because I have found that Mr. Rosen did not receive reasonably equivalent value in exchange for the transfer of the real estate, the analysis must now proceed to a determination of whether Mr. Rosen was insolvent or became insolvent as a result of the transfer; whether Mr. Rosen was engaged in a business or transaction for which any property remaining after the transfer of the interest in real estate was an unreasonably small capital; or whether Mr. Rosen intended to incur or believed that he would incur debts that would be beyond his ability to pay as such debts matured. 11 U.S.C. § 548(a)(1)(B)(ii).

Mr. Rosen's non-exempt assets consisted mainly of his financial stake in Rosen Auto. His liabilities resulted, in the main, from the operations of Rosen Auto. Both he and Mr. Otten testified that during January and early February of 2002, they believed that the business, although cash poor, would be able to continue operations. They believed that the value of the automobile inventory, along with the real estate owned by Rosen Auto, was of sufficient value that Rosen Auto would be able to pay its debts. Mr. Rosen believed that, in turn, he would be able to pay his debts. The company's financial records and its open lines of credit supported their belief. At that time, with no knowledge that the banks would soon take actions which would eliminate Rosen Auto's access to cash or credit, their belief that the company would survive was reasonable. I therefore do not find that either Rosen Auto or Mr. Rosen were left after the transfer with unreasonably small capital or that Mr. Rosen intended to incur or believed that he would incur debts that were beyond his ability to pay as they matured.

With regard to the insolvency prong of Section 548(a), the trustee presented expert testimony of a certified public accountant. He analyzed the books and records of Rosen Auto and made significant reductions with regard to the value of the inventory and the amount carried on the books as collectible receivables. The end result of such reductions and analysis is that, on a balance sheet basis, Rosen Auto was insolvent in January and February of 2002. It is Mr. Gratton's position that when determining the value of the assets for an insolvency analysis, one must attempt to determine "fair value," which must take into consideration the likelihood that the assets can be sold in the ordinary course of business over a reasonable time period, and not consider simply the immediate liquidation value of the assets. I find that the expert witness for the trustee did a proper analysis. He considered the historical collection record with regard to the receivables. He analyzed

the historical losses on the leases which were terminated early. He recognized the then-current value of the vehicle inventory as being less than the value carried on Rosen Auto's books. He analyzed the checking account statements and realized that they showed significant overdrafts on an ongoing basis. He made reasonable assumptions with regard to the financial status of the debtor, its financial ability to continue in business, and its asset value versus its liabilities. He concluded that Rosen Auto was insolvent by more than a million dollars.

I find as a fact that Rosen Auto was insolvent on the date of the transactions referred to in these two adversary proceedings. Because Rosen Auto was insolvent and Mr. Rosen was either a co-maker or a guarantor of all of the debt of Rosen Auto, and because his assets consisted mainly of stock in Rosen Auto, it necessarily follows that he was insolvent on the date that he transferred an interest in real property to Mr. Gratton or that he became insolvent as a result of the transfer.

A finding that Mr. Rosen did not receive reasonably equivalent value for the transfer and that he was insolvent on the date of the transfer results in the conclusion that the transfer to Mr. Gratton of the interest in real estate was a fraudulent transfer in violation of Section 548(a).

However, Section 548(c) provides an exception to the voidability of fraudulent transfers in favor of a "transferee or obligee of such a transfer or obligation that takes for value and in good faith." Section 548(c) does not use the term "reasonably equivalent value," as the term is used in Section 548(a), nor does Section 548(c) use the term "fair value," as that term is used in the definition of insolvency at 11 U.S.C. § 101(32). Mr. Gratton gave "value" to Mr. Rosen in exchange for the promissory note and the transfer of the interest in real estate. He had received the check from Rosen Auto in an amount in excess of $241,000. For such receipt, he cancelled the obligation of Rosen Auto to him. The check, in his possession, represented value. He gave it up in consideration for the new note from Mr. Rosen and the deed of trust securing the new note. According to the treatise Collier on Bankruptcy,

> Section 548(c) provides an exception to the voidability of fraudulent transfers in favor of a "transferee or obligee of such a transfer or obligation that takes for value and in good faith." It has been held that good faith requires an arm's length transaction, as well as the following three factors:
> (i) an honest belief in the propriety of the activities in question;
> (ii) no intent to take unconscionable advantage of others; and
> (iii) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others.

5 Collier on Bankruptcy ¶ 548.07[2][a] at 548-59 to -60 (15th ed. rev. 2004) (footnotes omitted).

As I have previously found in the section dealing with preference avoidance, this transaction between Mr. Rosen and Mr. Gratton was an "arm's length transaction." In addition, Mr. Gratton had an honest belief in the propriety of the transaction. It was simply a business transaction. He was changing the mix of his investment. He was receiving a promissory note with different terms from the note he had with Rosen Auto, but he was also receiving collateral for the note. There is no evidence, and I so find, that he had any intent to take unconscionable advantage of others nor did he have any intent to or knowledge of the fact that the activities in question would hinder, delay, or defraud others. He did not know the financial condition of Mr. Rosen or of Rosen Auto at the time of the transaction.

In conclusion, I find that Mr. Gratton, although having received a fraudulent transfer in the form of a lien on real estate owned by Mr. Rosen, took such transfer for value and in good faith and, pursuant to 11 U.S.C. § 548(c), may retain the real estate interest that he received.

Separate judgments shall be entered accordingly in each adversary proceeding.

DATED:  August 9, 2005

BY THE COURT:

 /s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
*Ann M. Grottveit
Kathryn J. Derr
U.S. Trustee

*Movant is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.